FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

2011 NOV 18  A 10: 38

CLERK'S OFFICE
AT BALTIMORE

ANIRUDH LAKHAN SUKHU,

    Petitioner,

       v.

UNITED STATES OF AMERICA,

    Respondent.

BY_____ DEPUTY

CIVIL NO.:    WDQ-11-0061
CRIMINAL NO.: WDQ-08-0557

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Anidruh Lakhan Sukhu pled guilty to armed bank robbery and use of a firearm during a crime of violence. On December 14, 2009, he was sentenced to 255 months imprisonment. Pending is Sukhu's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Court has determined that no hearing is necessary. *See* Rule 8 of the Rules Governing § 2255 Proceedings. For the following reasons, his motion will be denied.

I.    Background[1]

Before November 20, 2008, Sukhu and Omar Burnett were drug associates; they agreed to rob a Bank of America in Clarksville, Maryland. ECF No. 34 at 9. On November 20, 2008, Sukhu drove Burnett and Sharman Said in his black Ford truck to a church

_____

[1] The facts were agreed to by Sukhu and included in his July 8, 2009 Plea Agreement. ECF No. 34.

near the bank, and they walked to the bank.  *Id.*  Said carried a loaded sawed-off shotgun, and Burnett had a handgun.  *Id.*

At about 9:12 a.m., the men entered the bank.  Burnett announced the robbery with his weapon drawn while Said stood watch at the door and Sukhu, brandishing his own gun, went to an office where an employee hid.  Sukhu told the bank employee to "come out," and discharged his gun, shooting the employee in the hand.[2]  The employee lost two fingers.  *Id.*

Burnett had vaulted the teller counter and demanded that employees place money in a red and black bag.  Sukhu joined him after shooting the employee, taking money from the tellers and placing it into the bag.  *Id.*

Sukhu, Burnett, and Said fled to the truck, and Sukhu drove them away.  A witness called 911 and described Sukhu's truck. Marked police cars found and pursued the robbers on a high-speed chase through four counties.  *Id.*  Sukhu clipped cars and drove his truck toward marked police cars as he fled.  *Id.*

In Montgomery County, Sukhu, Burnett, and Said bailed out of the truck and continued to flee on foot.  *Id.*  Burnett fired at the officers, who returned fire, killing him.  *Id.* at 10. Sukhu and Said escaped; at 2:30 p.m., Sukhu called 911 to report that he had been carjacked at 10:00 a.m. that morning.  In a

---

[2] Later, a co-conspirator asked why Sukhu fired his gun.  He answered, "for effect."  ECF No. 34 at 9.

later interview with police, Sukhu was advised of and waived his *Miranda* rights and admitted participating in the robbery and shooting the employee.  *Id.*

On July 23, 2009, Sukhu pled guilty to armed bank robbery in violation of 18 U.S.C. § 2113, and use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), pursuant to a plea agreement.  ECF No. 33.  In exchange for Sukhu's guilty plea, the government agreed: (1) to recommend a within-guidelines sentence, (2) to dismiss Count One of the second superseding indictment,[3] and (3) not to oppose a two-level reduction in Sukhu's offense level for acceptance of responsibility.[4]  ECF No. 34 ¶¶6(a)(6), 9.  Sukhu "agree[d] that with respect to the calculation of the advisory guidelines range, no . . . potential departures . . . set forth in the United States Sentencing Guidelines will be raised or are in dispute."  *Id.* ¶8.

In his sentencing memorandum and at the sentencing hearing, Sukhu's attorney, Sean Vitrano, Esquire emphasized that Sukhu

---

[3] Charging Sukhu with conspiracy.  ECF No. 22.

[4] The government reserved the right to oppose an adjustment for acceptance of responsibility if Sukhu (a) failed to admit all facts in the stipulation, (b) denied his involvement in the offense or (c) gave conflicting statements about his involvement in the offense.  ECF No. 34 ¶6(a)(6).

has severe health problems,[5] felt coerced to participate in the robbery because of a drug debt he owed Burnett, is close to his family, and acted out of character when he robbed the bank. *See* ECF No. 64 Attach. 1 at 10:15-18, 16:23-25, 17:1-8. Sukhu told the Court at sentencing that he was "forced" to commit the robbery. *Id.* 19:3-4.

At sentencing, the Court acknowledged that Sukhu had owned his own business in which he employed unskilled workers[6] and his criminal conduct was "in many ways . . . uncharacteristic." *Id.* 20:5-12. The Court noted that the conduct was "severe," Sukhu had several minor drug offenses, and it was "hard . . . to make the case . . . for any form of duress" for Sukhu. *Id.* 13:6-8; 20:12-16. Sukhu's adjusted offense level 29 for the robbery count and his criminal history category (III), yielded an advisory guidelines range of 108 to 135 months. ECF No. 47 at 1. The firearm count carried a mandatory 120 month consecutive sentence. *Id.*

On December 11, 2009, the Court sentenced Sukhu to 135 months for bank robbery and a consecutive 120 months for use of

---

[5] Sukhu is HIV-positive and has a herniated disk in his back. ECF No. 62 Attach. 1 at 4-6.

[6] The Court recognized Sukhu's training program as the kind of effort that has "historically made [the United States] a better place to live." ECF No. 64 Attach. 1 at 20:5-10.

a firearm. ECF No. 46 at 1. On January 11, 2010, the Court

sentenced Said to 168 months imprisonment. ECF No. 54.

II. Analysis

    A. Ineffective Assistance of Counsel

        1. Legal Standard

The Sixth Amendment guarantees the effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prove ineffective assistance, Sukhu must show: (1) counsel's

performance was deficient and (2) the deficiency prejudiced his

defense. *Id.* at 687. To show deficient performance, Sukhu must

establish that counsel made errors so serious that the "rep-

resentation fell below an objective standard of reasonableness."

*Id.* at 688.

    To show prejudice, he must demonstrate a "reasonable

probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694.

Because Sukhu argues that the sentence--rather than the

conviction--was imposed without effective assistance of counsel,

he must show that his sentence would have been less if counsel

had not erred. *United States v. Breckenridge*, 93 F.3d 132, 136

(4th Cir. 1996).[7] Counsel's failure "to object to an improper

---

[7] When a defendant who pled guilty challenges his conviction or
the *imposition* of sentence, the focus is whether counsel's
"performance affected the outcome of the plea process." *Hill v.
Lockhart*, 474 U.S. 52, 59 (1985). That defendant must show that

application of the sentencing guidelines may amount to ineffective assistance." *Id.*.

      2.   Counsel's Failure to Request Downward Departures

Sukhu contends that counsel's performance was deficient because he failed to seek downward departures based on Sukhu's: (1) mental and emotional condition under U.S.S.G. §5H1.3, extraordinary physical impairment under U.S.S.G. §5H1.4, employment record under U.S.S.G. §5H1.5, and family ties and relationships under U.S.S.G. §5H1.6; (2) commission of the crime: as a lesser harm under U.S.S.G. §5K2.11, under coercion and duress under U.S.S.G. §5K2.12, with diminished capacity under U.S.S.G. §5K2.13, and as a result of aberrant behavior under U.S.S.G. §5K2.20; (3) unjustified sentencing disparity with his co-defendant under 18 U.S.C. 3553(a)(6); and (4) "extraordinary" sentence, "which constitutes a de facto death sentence." ECF No. 62 at 6-8.

Although Vitrano did not cite particular Sentencing Guidelines, he argued each of the mitigating factors Sukhu identified.

---

"there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Here, Sukhu challenges only his attorney's performance at sentencing. *See United States v. Tucker*, 603 F.3d 260, 267 (4th Cir. 2010) (applying *Breckenridge* standard to challenge to sentence imposed on guilty plea); *Tilghman v. United States*, No. 08-831, 2008 WL 4372812 at *2 (D. Md. Sep. 18, 2008).

    i. Sukhu Agreed that No Departures Applied

Sukhu agreed in the plea agreement not to request any

guidelines-based departures at sentencing.  ECF No. 34 ¶8.

Vitrano would have breached Sukhu's plea agreement by requesting

departures.  Released from its obligations under the plea

agreement, the government could have sought enhancements and

upward departures, and opposed an adjustment for acceptance of

responsibility.  *See* ECF No. 34.  It was reasonable for Vitrano

to comply with the plea agreement and avoid raising Sukhu's

exposure.  *Smith v. United States*, No. 05-cr-0201, 2008 WL

3992155 at *6 (W.D.N.C. Aug. 27, 2008) (Counsel was not

ineffective for failing to make an objection that would have

breached the terms of the plea agreement).

    ii. Sukhu was not Entitled to the 5H Departures

Sukhu contends that he was entitled to departures under

§§5H1.3, 5H1.4, 5H1.5, and 5H1.6.  ECF No. 62 at 6-8.

    a. U.S.S.G. §5H1.3: Mental and Emotional
       Conditions

A defendant's "[m]ental and emotional conditions are not

ordinarily relevant [to departures] except as provided in

[§5K2]."  U.S.S.G. §5H1.3.  Sukhu contends that he committed the

robbery with diminished mental capacity, a ground for a downward

departure under §5K2.13.  ECF No. 62 Attach. 1 at 23.  As

discussed below, Sukhu did not satisfy the requirements for that

departure. Accordingly, Vitrano's failure to explicitly request a §5H1.3 departure on the basis of diminished mental capacity or general mental conditions was not objectively unreasonable.

b.    U.S.S.G. §5H1.4: Physical Condition

A defendant's

> [p]hysical condition . . . is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. §5H1.4. Sukhu concedes that Vitrano "made much of an argument that [the Bureau of Prisons] could not properly treat [his] medical condition," but Vitrano erred by not requesting a downward departure on that basis. ECF No. 62 Attach. 1 at 22.

At sentencing, the Court acknowledged Vitrano's concerns about Sukhu's health, but disagreed with the assertion that Sukhu could not be adequately treated in prison. ECF No. 64 Attach. 1 at 10:25, 11:1-6 ("[T]he Bureau of Prisons does an excellent job of providing medical care.").[8] Further, the Bureau of Prisons considered Sukhu's condition and affirmed that it regularly treats prisoners with Sukhu's medical conditions. ECF No. 44 Attach. 4 (sealed).

---

[8] See also United States v. DePew, 751 F. Supp. 1195, 1199 (E.D. Va. 1990), aff'd 932 F.2d 324 (4th Cir. 1991) (the Bureau of Prisons regularly provides "the care and treatment [AIDS patients] need[]").

Notwithstanding Vitrano's argument, the Court clearly indicated that it did not believe a departure was necessary or "as efficient as" imprisonment. *See* U.S.S.G. §5H1.4.[9] Sukhu has not shown a reasonable probability that the Court would have departed had Vitrano formally invoked §5H1.4.

    c. U.S.S.G. §5H1.5: Employment Record

A defendant's "[e]mployment record is not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. §5H1.5. Sukhu suggests that in his extraordinary case his employment record demonstrated that he was "not a garden-variety criminal" and was entitled to a downward departure. ECF No. 62 Attach. 1 at 26.

The presentence report states that from 1999 to 2002, Sukhu owned a company and employed individuals without work experience, training them in electronic wiring. Presentence Report ¶¶68-69. Sukhu reported no employment since 2002. *Id.*

"[F]or most defendants, holding a steady job is not extraordinary, but in fact expected." *United States v. Jaderany*, 221 F.3d 989, 996 (7th Cir. 2000). Even a "strikingly

---

[9] *See also United States v. Woody*, 55 F.3d 1257, 1275 (7th Cir. 1995) (HIV positive patient who "[did] not have full-blown AIDS" was not entitled to a downward departure because disease had not "progressed to such an advanced stage that it could be characterized as an 'extraordinary physical impairment.'" (*citing DePew*, 751 F. Supp. at 1199)).

meritorious" employment record does not necessarily entitle a defendant to a departure. *Id.* at 996-97.

Sukhu's efforts to train unskilled workers were admirable, but were not extraordinary circumstances for a downward departure. *Cf. id.* He reported no employment after 2002. Presentence Report ¶¶68-69. As there were no extraordinary circumstances, Sukhu was not entitled to a downward departure. Accordingly, it was reasonable for counsel to comply with the plea agreement and not request such a departure; Sukhu was not prejudiced by Vitrano's conduct.

> d.   U.S.S.G. §5H1.6: Family Ties

A defendant's "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. §5H1.6. Sukhu repeats his argument that he "was not a garden-variety criminal," identifying no family responsibilities that might merit a downward departure.

"[M]any persons convicted of a criminal offense have family responsibilities . . .; such responsibilities, standing alone, cannot be considered extraordinary." *Jaderany*, 221 F.3d at 997. Having identified *no* family responsibilities, Sukhu has not shown a reasonable probability that the Court would have departed based on extraordinary family responsibilities had Vitrano formally invoked §5H1.6.

iii. Sukhu was not Entitled to the 5K Departures

a. U.S.S.G. §§5K2.11, 5K2.12: Lesser Harms & Coercion or Duress

A downward departure may be appropriate when the defendant commits the crime "to avoid a perceived greater harm," but only if "the circumstances significantly diminish society's interest in punishing the conduct." U.S.S.G. §5K2.11. The Court may also depart "if the defendant committed the offense because of serious coercion . . . or duress, under circumstances not amounting to a complete defense." *Id.* §5K2.12.

Sukhu contends that Burnett's "threats of physical harm and/or death to [Sukhu's] family" constituted duress, and he committed the robbery to avoid the greater harm of retaliation for his drug debt against his family. ECF No. 62 Attach. 1 at 37.

The Court was aware of the drug debt and alleged threats to Sukhu's family. *See* ECF No. 42 at 3 (sealed). The Court addressed the issue at sentencing and stated that the circumstances did not amount to "anything remotely like compulsion or duress." ECF No. 64 Attach. 1 at 13:6-12. It is not reasonably probable that Vitrano's request for a downward departure based on lesser harms or coercion and duress, would have been granted, considering that the Court had found no coercion or duress.

11

b.    U.S.S.G. §5K2.13: Diminished Capacity

The Court may depart downward if (1) the defendant suffered from a significantly reduced mental capacity when he committed the offense and (2) it "contributed substantially to the commission of the offense." U.S.S.G. §5K2.13. The Court may not depart on this ground if "the offense involved actual violence," because in that case the "need to protect the public" outweighs any interest in reducing the defendant's sentence. *Id.*

In the course of Sukhu's offense, he shot a bank employee, and Burnett fired at police officers. ECF No. 34 at 9-10. Because Sukhu's offense involved violence, he would have been ineligible for a downward departure under §5K2.13. It was not error for Vitrino not to request one.

c.    U.S.S.G. §5K2.20: Aberrant Behavior

The Court may depart downward in exceptional circumstances if the offense "(1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. §5K2.20. A departure under this guideline is prohibited if the offense involved serious bodily injury or the defendant discharged a firearm. *Id.* Serious bodily injury includes extreme physical pain and injury requiring surgery. *Id.* §1B1.1 comment. (n.1(L)).

12

In the course of the offense, Sukhu discharged his firearm, shooting a bank employee and causing her loss of two fingers. ECF No. 34 at 9. Accordingly, even if he could have shown he led an "otherwise law-abiding life," and that the offense was unplanned, he would not have qualified for a §5K2.20 departure. Vitrano's decision not to request that departure was objectively reasonable.

iv. There was no Sentencing Disparity

Sukhu contends that Vitrano should have requested a downward departure to avoid an unwarranted sentencing disparity between his and Said's sentences.[10] ECF No. 62 at 7. The Court sentenced Sukhu before it sentenced Said. ECF Nos. 46, 54. Accordingly, there was no disparity when the Court sentenced Sukhu.

The Court judges the reasonableness of an attorney's representation by what he knows or should know at the time of the proceeding, not what he might have done, in hindsight. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). Not knowing how the Court would sentence Said, it was reasonable for Vitrano to decide not to formally request a departure based on an unwarranted sentencing disparity. Further, Vitrano

---

[10] Said's sentence, based on an offense level 28 and a criminal history category V for the robbery count, was 168 months--84 months on the robbery count and 84 months on the firearm count. ECF Nos. 52, 54.

emphasized to the Court that Sukhu was the "least culpable" of his co-conspirators and did not plan the robbery, suggesting that his punishment should be less severe than what the Court contemplated for Said's, bringing the issue of co-defendant sentencing to the Court's attention. ECF No. 64 Attach. 1 at 14:6-10.

v. Sukhu was not Sentenced to Death

Sukhu contends that Vitrano unreasonably failed to seek a downward departure because Sukhu's life expectancy was shorter than his prison sentence, and the Bureau of Prisons would not be able to care for his medical conditions. ECF No. 62 at 7.

At sentencing Vitrano stated to the Court that "it seems very likely that Mr. Sukhu will not live out the duration of [his] sentence." ECF No. 64 Attach. 1 at 11:18-19. He noted that this would probably be the case "[w]hether the Court imposes a ten-year sentence today or a 21-year sentence." *Id.* Attach 1 at 11:17-18. Vitrano also argued that the Bureau of Prisons would, "at some point . . . wave the white flag and send Mr. Sukhu home or to a hospice so that it that it can deal with his condition." *Id.* Attach. 1 at 11:14-17.

Though Vitrano did not cite 18 U.S.C. § 3553(a) in this discussion, he adequately raised the issue, and the Court decided that the circumstances did not merit a departure. *See* ECF No. 64 Attach. 1 at 10:25, 11:1, 20:11-19. Accordingly,

14

Vitrano's representation was not objectively unreasonable, and Sukhu has not shown that he is entitled to relief.

B.   Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted).  Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Sukhu has not made a substantial showing of the denial of constitutional rights, this Court will not issue a COA.

III. Conclusion

For the reasons stated above, Sukhu's motion to vacate, set aside, or correct sentence will be denied.


_____11/17/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge

16